Hillsborough,  ⎰
   Dec., 1897.  ⎱

AMOSKEAG MANUFACTURING CO. *v.* SHIRLEY *& a.*

69  269
170  579

Construction given to certain deeds conveying flowage rights.

In the interpretation of written instruments relative words are generally to be referred to the next antecedent; but if the subject-matter or the obvious intent of the parties requires a different construction, such reference may be made as will effectuate the intent.

BILL IN EQUITY, for an injunction to restrain the defendants from removing the flashboards from the plaintiffs' dam across the Merrimack river at Manchester.

*David Cross* and *Burnham, Brown & Warren,* for the plaintiffs.

*David A. Taggart* and *Oliver E. Branch,* for the defendants.

BLODGETT, J. This case lies within narrow limits, and the question to be decided is, in our view, remarkably free from doubt.

January 11, 1875, the defendants, in consideration of $3,525, conveyed to the plaintiffs the right and privilege " to build, erect, complete, and maintain its stone dam to the height it is now constructed across Merrimack river, on or near Amoskeag Falls, so called, in said Manchester, and the right to place flashboards thereon to any height above the present top of said stone dam not exceeding two feet; such flashboards to be not exceeding one inch and a half in thickness, supported against iron pins, not exceeding one and one half inches in diameter, standing in holes drilled in the dam not nearer than four feet from each other; and the right and privilege to raise the water of said river and to flow a certain tract of land situate in Hooksett," described in the deed, " and all other real estate by said John and Susan W. Shirley owned, situated on or near said river, or on any branch thereof, or on any brook flowing into said river, at their pleasure, by means of said dam and flashboards thereon as aforesaid." It goes quite without the saying that under this deed it is unquestionably the right of the plaintiffs to maintain flashboards two feet in width upon the dam during the entire year, if they so elect.

Possessed of this right and finding it would be an advantage to them to increase the height of the flashboards to three feet during the dry months of the year, the plaintiffs, sometime in 1886, sent to the defendants and other riparian owners above the dam a circular letter stating that it would be an advantage to

the company to obtain the right to increase the height of the flashboards maintained on their stone dam at Manchester to three feet during June, July, August, September, October, November, December, January, and February, but that for the months of March, April, and May, the right they then had to maintain two feet of flashboards was amply sufficient; and that the company was willing to pay for the additional foot the sum of five dollars per running rod of river bank between Manchester and Hooksett, on all that part of the bank which they had not already the right to flow indefinitely. This offer was accepted by the defendants, and on December 26, 1887, in consideration of $1,000, they conveyed to the plaintiffs, by deed duly executed, " the right and privilege to put and maintain upon its stone dam, as now constructed, . . . flashboards of the width and height of three feet above the top of said dam, being one foot in width and height above and in addition to the flashboards which said Amoskeag Manufacturing Company has heretofore had the right to maintain on said dam, — such flashboards not to be renewed, replaced, or repaired during the months of March, April, and May in each year."

The issue between the parties arises upon the construction of this deed, — that is to say, the plaintiffs claim the right under their first deed to place flashboards upon the dam during the aforesaid three months two feet in width, in case any have been carried away by water or otherwise; while the defendants claim the plaintiffs cannot lawfully place upon the dam or renew any flashboards whatever during said months, or, in other words, that the plaintiffs by acquiring the right, at an expense of $1,000, to maintain three-foot flashboards for nine months of the year, surrendered and lost the right, for which they had paid $3,525, to maintain two-foot flashboards for the entire year.

The bare statement of this issue renders it almost superfluous to say that the defendants' claim cannot be sustained. There was no exchange of rights between the parties by the second deed. Its obvious purpose was to give the plaintiffs an additional right, and no other effect can be given to it consistently with elementary rules of construction. In fact, substantially the only ground for the defendants' contention having the semblance of a reason is the extremely hypercritical one that the flashboards referred to by the word " such" are the two-foot boards, because they are the ones next immediately preceding. Concede this to be so according to strict grammatical rules, and it can have but little significance or weight. The intention of the parties, actual and expressed, to the contrary, does not admit of reasonable doubt when the whole deed is construed together, as it must be, and still less when the competent extrinsic evidence appearing in the case is considered, as it properly may

be. In the interpretation of deeds and other written instruments, courts are bound to effectuate the intention of the parties if it can be done consistently with the rules of law; and in this case no rule has been or can be found which prevents the carrying of that intention into effect. Even the grammatical rule invoked by the defendants does not afford a plausible pretext for a different conclusion; for while it is true that relative words are generally to be referred to the next antecedent, yet if the subject-matter, or the obvious intent of the parties, requires a different construction, such reference may be made as will effectuate the intent. *Osgood* v. *Hutchins*, 6 N. H. 374.

It appearing that the defendants are insolvent and unable to respond in damages, and that they have once unlawfully removed the flashboards on the plaintiffs' dam, and threaten and intend to repeat such unlawful act to the serious injury and damage of the plaintiffs and others, equity will afford relief by interposing its restraining power. *Steam Mills* v. *Hickey*, 59 N. H. 241, 242, and authorities cited.

*Injunction granted.*

CHASE and PARSONS, JJ., did not sit: the others concurred.